IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:25CR135 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL NAWALENIEC, | ) | BRIEF IN OPPOSITION TO MOTION |
| | ) | FOR PRETRIAL RELEASE |
| Defendant. | ) | |

Now comes the United States of America, by and through Acting United States Attorney,

Carol M. Skutnik, and Assistant United States Attorney, Michelle M. Baeppler, and for the

reasons stated below, opposes Defendant's Motion for Pretrial Release.

## I.      Facts

This investigation began in late 2022, when a concerned citizen reported to a local police

department that Nawaleniec was trying to sell him firearms.  It was learned that Nawaleniec is

prohibited by virtue of an Arson conviction in 2012.

An ATF agent, acting in an undercover capacity, contacted Nawaleniec via a social media

platform in an effort to determine whether Nawaleniec would sell him a firearm. Nawaleniec was

willing.

The first purchase of a firearm by Nawaleniec occurred on December 28, 2022.

Nawaleniec met the UC at a gas station on Memphis Avenue and sold him a Romarm pistol.

The transaction was captured on both audio and video.  This transaction is represented by Count

1 of the indictment.

The second sale was of a MCD by Nawaleniec to the UC and occurred on January 4, 2023.  This sale was facilitated between Nawaleniec and the UC through a series of text messages, all of which have been preserved for evidentiary purposes.  However, for this sale, Nawaleniec sent his a relative to conduct the delivery.  On this date, the UC purchased a machine conversion device (MCD) (Count 2).  Like the purchase before, this transaction was also captured on video and audio.

The third sale by Nawaleniec to the UC occurred on January 19, 2023, and consisted of a sale of another MCD (Count 4) and a Steyr Arms rifle (Count 3) by Nawaleniec to the UC. This transaction was also video and audio recorded.

After these three transactions, law enforcement sought search warrants for the two residences from which Nawaleniec was taking firearms and MCD's for sale.  These two residences included one on Ardmore Avenue in Cleveland (mother's residence) and one on Eichorn Avenue in Cleveland (actual personal residence).

The execution of warrants at these residences revealed multiple firearms, MCD's and silencers.  (Counts 5, 6, 7, & 8)

On the day the search warrants were executed, Nawaleniec agreed to an interview.  He took responsibility for all the firearms, MCD's and silencers in both residences.  His mother was also interviewed and indicated that all the items belonged to her son.  She also added that Nawaleniec is a "doomsday prepper."

During his interview, Nawaleniec revealed that he "was" a fentanyl addict, but claimed that he no longer used.

## II.      Controlling Law & Argument

Title 18 U.S.C. 3142 controls in this instance.  More specifically, 18 U.S.C. § 3142

provides that the government may move for detention in a case that involves —

(f)(1)

(A)  a crime of violence . . .for which a maximum term of imprisonment of 10 years or more is prescribed;

(B)  an offense for which the maximum sentence is life imprisonment or death;

(C)  an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act;

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or;

(E)  any felony that is not otherwise a crime of violence that involves a minor victim ***or that involves the possession or use of a firearm or destructive device*** (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code.

Further, § 3142 also outlines factors to be considered in whether there are conditions of

release that will reasonably assure the appearance of the person as required and the safety of any

other person and the community, taking into account the available information concerning—

(g)(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or other destructive device;

(2) the weight of the evidence against the person;

(3)  the history and characteristics of the person, including —

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings, and

3

(B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Applying the factors to be considered under § 3142 in this instance, the government submits Defendant presents a danger to the community that counsels in favor of detention.

In this instance, defendant, a prohibited person, was found in possession of dozens of firearms, MCD's and silencers.  Moreover, he was recorded not only possessing these items, but also selling them.  Some of the items he was selling, particularly machine gun conversion devices, were in and of themselves illegal. MCD's are devices that convert a semi-automatic firearm into a fully automatic one.

Further, defendant is a convicted felon, many times over.  His criminal history is consistent and unabated and is outlined as follows:

Arson, F4, Cuyahoga County Common Pleas Court, 2012, 6 months' imprisonment.  Date of conviction 03/22/2012

Vandalism, F5, 2013, 103 days jail

Drug Possession, 2017, F5, Community Control sanctions

Attempted Inducing Panic, F5, Vandalism, F5, 2019, 9 months' imprisonment

Attempted Nonsupport of Dependents, 2022, M1

Additionally, the strength of the evidence against defendant is good.  Defendant is captured on video not only in possession of firearms, but also selling them.  Further, when the warrants were executed at the residences associated with him, he admitted that the dozens of firearms, multiple MCD's and silencers, all belonged to him.

4

Finally, at the time of the execution of the search warrant at the residences associated with him, Defendant reported that he was a fentanyl user but denied recent use.  Recently, at the time of arraignment, Pretrial Services attempted to administer a urine test to Defendant, but he would not or could not void.   Defendant appeared for his arraignment, emaciated and by appearance, in poor health.  He was described to have an open and festering wound on his leg, for which he had not sought treatment.  The wound was reported by those handling him physically, to smell from infection.  Defendant claimed that this infected would was from previous drug use that had not healed.

At the time of his arraignment, Defendant was remanded to the custody of the U.S. Marshall, pending trial.  He was never drug tested, and given that weeks have passed, it is unlikely that there are presently drugs in his system.  However, given his self-reported history of fentanyl use, his failure to void on the date of arraignment, and his overall physical appearance and condition, it is not unrealistic to conclude that there are indicia of current drug use present.

Further, Defendant also presents a risk of flight.  Defendant is unemployed, owns no property here in the district and reports no assets.  Moreover, he reports having no relationship with his minor child.  Such is the condition of one without stable ties to the community, and one that poses a risk of flight.

Contrary to Defendant's assertion, not having a passport is not determinative of one's risk of flight.  Fleeing the jurisdiction does not mean that one cannot literally and physically run, but rather, contemplates international flight, as well as domestic flight.  A 'flight risk' is simply a person who is likely to abscond from the jurisdiction . . . not only by foot, but also by plane, train or automobile.

Certainly, having broken bones in one's leg, makes movement more difficult, but that does not mean defendant cannot get into a car, on a bus, or on a plane.  Defendant's argument that he can't run, and thus he is not a 'flight risk' is unpersuasive.

### III.    Conclusion

Based upon the law and for the reasons outlined above, the government believes that Defendant is both a danger to the community and a flight risk, and as such should be detained pending trial.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:    /s/ Michelle M. Baeppler
Michelle M. Baeppler (OH: 0065378)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3995
(216) 522-8354 (facsimile)
Michelle.Baeppler@usdoj.gov